Filed 4/24/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LEWIS VERNARD BLAKELY,<br><br>    Defendant and Appellant. | F067590<br><br>(Super. Ct. No. BF106973A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I. and IV. of the Discussion.

## INTRODUCTION

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code] sections 667 and 1170.12 and added [Penal Code] section 1170.126 (hereafter the Act [or Proposition 36]).[1] The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. (§§ 667, 1170.12.) The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

After the Act went into effect, Lewis Vernard Blakely (defendant), an inmate serving a term of 25 years to life in prison following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for recall of sentence, seeking resentencing under the Act. The trial court ultimately determined defendant did not qualify (was ineligible) for resentencing and denied the petition. Defendant now appeals.

In the published portion of this opinion, we hold that a person convicted of being a felon in possession of a firearm is not automatically disqualified from resentencing by

---

**1** Further statutory references are to the Penal Code unless otherwise stated.

virtue of that conviction; such a person is disqualified only if he or she had the firearm available for offensive or defensive use. We also hold disqualifying factors need not be pled and proved to a trier of fact beyond a reasonable doubt; hence, a trial court determining whether an inmate is eligible for resentencing under section 1170.126 may examine relevant, reliable, admissible portions of the record of conviction to determine the existence of a disqualifying factor. Because, as we discuss in the unpublished portion of our opinion, we cannot determine whether the trial court based its finding of ineligibility on reliable and admissible portions of the record of conviction, we reverse the finding of ineligibility and remand for further proceedings. In the unpublished portion, we also hold that a trial court's order finding a defendant not eligible for resentencing is appealable.

## FACTS AND PROCEDURAL HISTORY[2]

Early on June 4, 2004, defendant and a friend, Charles Williams, met Joyce Jones and Marquita Moore at a bar. Some time later, they all went to Moore's apartment. Once there, defendant and Jones stayed in the living room, while Moore and Williams went into the bedroom.

While defendant and Jones were sitting in the living room, Moore's live-in boyfriend, Kenneth Cannon, came home unexpectedly, broke into the bedroom, and discovered Moore and Williams engaged in sexual intercourse. Cannon punched and kicked Moore, then left the bedroom and retrieved a semiautomatic pistol from under a

---

**2** The facts of defendant's current offenses and portions of the procedural history are taken from this court's nonpublished opinion in *People v. Blakely* (Jan. 3, 2006, F047509). That opinion recites, in turn, that its facts were taken from the probation officer's report and defendant's motion to dismiss a felony strike allegation, the accuracy of which the trial prosecutor did not contest. We include these facts to give a complete picture of the overall case. Our inclusion of them should not be read as necessarily endorsing their use for purposes of determining eligibility for resentencing. (See part IV. of Discussion, *post*.)

couch in the living room. Seeing that Cannon was armed, defendant removed a revolver from his own pocket and exchanged gunfire with Cannon. Defendant and Jones sustained gunshot injuries, and Cannon was fatally wounded. After firing every bullet from his weapon, defendant fled the scene. He subsequently told police he carried the revolver for protection, because while he was in prison, he testified against some people who were now on the streets. He said he also had the gun because he was on the east side and in enemy territory.

Defendant was charged with possessing cocaine base for sale (Health & Saf. Code, § 11351.5; count 1), being a felon in possession of a firearm (former § 12021, subd. (a)(1), see now § 29800, subd. (a)(1); count 2), and possessing cocaine base while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a); count 3).[3] It was further alleged as to all three counts that defendant was acting for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and, as to count 1, that he was personally armed with a firearm (§ 12022, subd. (c)). Finally, as to each count, it was alleged defendant had suffered two prior "strike" convictions and had served a prior prison term.

On the day trial was set to begin, the court granted the prosecutor's motion to dismiss counts 1 and 3, and the gang enhancements. As part of a "slow plea," defendant waived his right to a jury trial on count 2, stipulated to the existence of the strike priors, and stipulated that, on June 4, 2004, he had in his possession a handgun, a Smith and Wesson six-shot "long Colt" revolver. Based on those stipulations, the court found defendant guilty of count 2, and found true the strike prior and prior prison term

---

**3** Former section 12021, subdivision (a)(1) was repealed as of January 1, 2012, but its provisions were reenacted without substantive change as section 29800, subdivision (a)(1). (*People v. Sanders* (2012) 55 Cal.4th 731, 734, fn. 2.) Because defendant was convicted under the repealed statute, which was only renumbered without substantive change, we refer to former section 12021 throughout this opinion for clarity and convenience. For brevity, we will not use the word "former" and will sometimes omit the subdivision.

allegations. On January 5, 2005, defendant was sentenced to a total unstayed term of 25 years to life in prison.

On December 6, 2012, defendant petitioned the trial court for a recall of sentence pursuant to section 1170.126. In pertinent part, he asserted he was statutorily eligible for resentencing under the Act because: (1) The fact he was convicted of violating section 12021 did not automatically mean he was armed with a firearm because simple possession of a firearm is not the same as being armed with a firearm; (2) The drafters of the Act did not intend for a section 12021 violation to make otherwise eligible defendants ineligible for relief; (3) The prosecution did not plead and prove defendant used or was armed with a firearm during the commission of his current offense; and (4) There was no factual record to support a finding of firearm use or arming during the commission of the current offense, since defendant stipulated only to possession of a firearm and it would be improper for the court to rely on the underlying facts of the case.

The People opposed the petition on the ground defendant was ineligible for resentencing pursuant to section 667, subdivision (e)(2)(C)(iii). The People argued: (1) "[A]rmed with a firearm," as used in the Act, is not limited to the meaning of that term as used in section 12022; (2) Even if section 12022's definition of "armed" applied to the Act, defendant's conviction for violating section 12021 would meet the definition; (3) The rules of *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny do not apply to resentencing under the Act; (4) The trial court was not limited to a consideration of the trial stipulation, but could review the record of conviction to determine eligibility; and (5) The facts shown by the record of conviction demonstrated defendant was "armed with a firearm" during commission of his current offense.

On March 6, 2013, a hearing was held on defendant's petition. After argument, the trial court acknowledged that one convicted of being a felon in possession of a firearm was not necessarily armed. Because it was not pled and proved that defendant

was armed with a firearm in commission of his current offense, the court found him "technically eligible to be considered for resentencing under Proposition 36."

On June 25, 2013, the People moved for reconsideration based on *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279 (*Kaulick*), which was decided after the trial court's ruling. Defendant opposed the motion. On June 27, 2013, at the conclusion of argument on the issue, the court reiterated that a violation of section 12021 did not automatically render an individual ineligible for resentencing under the Act. The court found that the voters did not intend to have people resentenced who were a danger to society by virtue of the use of firearms or being armed with firearms; hence, the court logically could look at the overall facts and circumstances of the case to determine eligibility for resentencing. The court concluded that, because defendant was armed with and used a firearm, he was disqualified from resentencing.

## DISCUSSION

### I. The trial court's ruling is appealable.

Both parties say the trial court's denial of defendant's petition is appealable. We agree.[4] The right of appeal is statutory and "'a judgment or order is not appealable unless expressly made so by statute.'" (*People v. Mazurette* (2001) 24 Cal.4th 789, 792.) Although section 1170.126 does not specifically authorize an appeal from the denial of a petition or motion for resentencing, section 1237 provides that a defendant may appeal "[f]rom a final judgment of conviction" (*id.*, subd. (a)) or "[f]rom any order made after

---

[4] The appealability issue is currently pending before the state Supreme Court. (E.g., *People v. Leggett* (2013) 219 Cal.App.4th 846, review granted Dec. 18, 2013, S214264 [concluding denial is not appealable if petition was erroneously filed by individual whose sentence is based on conviction for serious or violent felony, but is appealable in all other instances]; *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [concluding denial is nonappealable because Act confers no substantial rights on eligibility issue]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [concluding denial is appealable because Act confers substantial right].)

judgment, affecting the substantial rights of the party" (*id.*, subd. (b)).  First, the trial court's denial of defendant's petition was an order made after judgment since, in a criminal case, judgment is synonymous with the imposition of sentence.  (*Fadelli Concrete Pumping, Inc. v. Appellate Department* (1995) 34 Cal.App.4th 1194, 1200.)  Sentence was imposed for defendant's current offense in 2005.  Second, a finding of eligibility is a prerequisite to the trial court having the power to exercise resentencing discretion.  If the trial court determines the inmate is ineligible, the inmate has no further opportunity to be resentenced as a second strike offender.  The eligibility finding, therefore, affects the inmate's substantial rights.  (See *People v. Totari* (2002) 28 Cal.4th 876, 880-887 [although § 1016.5 (requiring a defendant to be advised of the potential adverse immigration consequences resulting from his or her conviction before entering a plea of guilty or nolo contendere) does not expressly authorize an appeal from a trial court's denial of motion to vacate a judgment for failure to so advise, such an order is appealable].)

## II.      Defendant was not automatically disqualified from resentencing by his current conviction for being a felon in possession of a firearm.

Insofar as is pertinent to this appeal, in order for an inmate to be eligible for resentencing under the Act, his or her current sentence cannot have been "imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."  (§ 1170.126, subd. (e)(2).)  Thus, an inmate is disqualified from resentencing if, inter alia, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

"[A]rmed with a firearm" has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively.  (E.g.,

§ 1203.06, subd. (b)(3); Health & Saf. Code, § 11370.1, subd. (a); *People v. Bland* (1995) 10 Cal.4th 991, 997 [construing § 12022].) "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" (*People v. Weidert* (1985) 39 Cal.3d 836, 844), "and to have enacted or amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d 321, 329). "This principle applies to legislation enacted by initiative. [Citation.]" (*People v. Weidert*, *supra*, at p. 844.)

Where, as here, "the language of a statute uses terms that have been judicially construed, '"the presumption is almost irresistible"' that the terms have been used '"in the precise and technical sense which had been placed upon them by the courts."' [Citations.] This principle [likewise] applies to legislation adopted through the initiative process. [Citation.]" (*People v. Weidert, supra,* 39 Cal.3d at pp. 845-846.) Accordingly, we conclude the electorate intended "armed with a firearm," as that phrase is used in the Act, to mean having a firearm available for offensive or defensive use.

Defendant's current conviction was for violating section 12021, subdivision (a)(1), which, at all times pertinent to this appeal, has made it a felony for a person previously convicted of a felony to own or have in his or her possession or under his or her custody or control, any firearm. The elements of this offense are conviction of a felony and ownership or knowing possession, custody, or control of a firearm. (*People v. Snyder* (1982) 32 Cal.3d 590, 592; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922.) "A defendant possesses a weapon when it is under his dominion and control. [Citation.] A defendant has actual possession when the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. [Citations.]" (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083-1084.) "Implicitly, the crime is committed the instant the felon in any way has a firearm within his control." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410, italics omitted.)

A firearm can be under a person's dominion and control without it being available for use.  For example, suppose a parolee's residence (in which only he lives) is searched and a firearm is found next to his bed.  The parolee is in possession of the firearm, because it is under his dominion and control.  If he is not home at the time, however, he is not armed with the firearm, because it is not readily available to him for offensive or defensive use.  Accordingly, possessing a firearm does not necessarily constitute being armed with a firearm; hence, the trial court correctly determined defendant was not automatically ineligible for resentencing by virtue of his conviction for violating section 12021.

This conclusion comports with the electorate's intent in enacting Proposition 36.  "In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction.  [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685.)  "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.)  The issue, being one of interpretation of a statute and its applicability to a given situation, is a question of law we review independently. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; see *People v. Cromer* (2001) 24 Cal.4th 889, 894.)

"In determining intent, we look first to the words themselves.  [Citations.]  When the language is clear and unambiguous, there is no need for construction.  [Citations.]  When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.)  We also "'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in

9.

the official ballot pamphlet.' [Citation.]" (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.) "'"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]"'" (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.) "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*Horwich v. Superior Court, supra,* 21 Cal.4th at p. 276.)

Finally, we take into account the rule of lenity. "'That rule generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. But … 'that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" [Citations.]' [Citation.] 'The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies "'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.'" [Citation.]' [Citation.]" (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.) "Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 783.)

An examination of the statutory scheme as a whole supports the conclusion the phrase "[d]uring the commission of the current offense, the defendant … was armed with a firearm," as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12,

10.

subdivision (c)(2)(C)(iii), and as disqualifies an inmate from resentencing pursuant to section 1170.126, subdivision (e)(2), extends to situations in which the defendant was convicted of violating section 12021 *if* the defendant had the firearm he or she was convicted of possessing available for use, either offensively or defensively. A conviction for violating section 12021 is insufficient, standing alone, to disqualify a defendant. Rather, as we discuss, *post*, the record of conviction must establish arming (or one of the other disqualifying factors).[5]

The purpose of the three strikes law has been variously stated as being "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses'" (*In re Young* (2004) 32 Cal.4th 900, 909) and "to promote the state's compelling interest in the protection of public safety and in punishing recidivism" (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070). Although the Act "diluted" the three strikes law somewhat (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 167), "[e]nhancing public safety was a key purpose of the Act" (*id*. at p. 175).

In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term. By including as a disqualifying factor an inmate's mere intent, during commission of the current offense, to cause great bodily injury to another person, the electorate signaled its own intent that disqualifying conduct not be limited to what is

---

[5]     In light of the issues presented in this appeal, unspecified references to disqualifying factors refer to those factors set out in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii). Although the trial court here found defendant was armed with and used a firearm during commission of his current offense, we focus solely on arming.

specifically proven or punishable in the form of an offense or enhancement. Apparently recognizing the maxim *expressio unius est exclusio alterius* — the expression of some things in a statute necessarily means the exclusion of other things not expressed (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852) — voters rendered ineligible for resentencing not only narrowly drawn categories of third strike offenders who committed particular, specified offenses or types of offenses, but also broadly inclusive categories of offenders who, during commission of their crimes — and regardless of those crimes' basic statutory elements — used a firearm, were armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person. Significantly, however, those categories, while broad, are not unlimited. Voters easily could have expressly disqualified any defendant who committed a gun-related felony or who possessed a firearm, had they wanted to do so. This is not what voters did, however.

That our conclusion comports with voters' intent is supported by the ballot materials related to Proposition 36. We recognize the "OFFICIAL TITLE AND SUMMARY" stated in part that the initiative "[c]ontinues to impose life sentence penalty if third strike conviction was for certain nonserious, non-violent sex or drug offenses *or involved firearm possession*." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) official title and summary, p. 48, italics added.) Other portions of the materials retreated from such a sweeping pronouncement, however. In summarizing then-existing law, the legislative analysis of Proposition 36 listed, as examples of violent felonies, murder, robbery, and rape; as felonies that were serious but not violent, assault with intent to commit robbery; and as felonies not classified as violent or serious, grand theft (not involving a firearm) and possession of a controlled substance. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 36 by Legis. Analyst, p. 48.) In summarizing how the initiative measure would shorten sentences for some third strikers, the Legislative Analyst explained there would be some exceptions to the shorter sentence: "Specifically, the measure requires that if the offender has committed certain new or prior offenses,

12.

including *some* drug-, sex-, and *gun-related felonies*, he or she would still be subject to a life sentence under the three strikes law." (*Id*. at p. 49, italics added.) The legislative analysis further described how certain current third strikers would be resentenced, but explained that Proposition 36 "limits eligibility for resentencing to third strikers whose current offense is nonserious, non-violent, and who have not committed specified current and prior offenses, such as *certain* drug-, sex-, and *gun-related felonies*." (Voter Information Guide, Gen. Elec., *supra*, at p. 50, italics added.)

In their "ARGUMENT IN FAVOR OF PROPOSITION 36," the measure's proponents spoke in terms of making the punishment fit the crime, saving California money, and making room in prison for dangerous felons. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52.) In their "REBUTTAL TO ARGUMENT AGAINST PROPOSITION 36," the proponents stated, in part: "Prop. 36 requires that murderers, rapists, child molesters, *and other dangerous criminals* serve their full sentences. [¶] … [¶] Today, dangerous criminals are being released early from prison because jails are overcrowded with *nonviolent offenders who pose no risk to the public*. Prop. 36 prevents dangerous criminals from being released early. *People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences*." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53, original italics omitted, italics added.)

Section 1 of the proposed law found and declared:

"The People enact the Three Strikes Reform Act of 2012 to restore the original intent of California's Three Strikes law — imposing life sentences for *dangerous criminals* like rapists, murderers, and child molesters.

"This act will:

"(1) Require that murderers, rapists, and child molesters serve their full sentences — they will receive life sentences, even if they are convicted of a new minor third strike crime.

13.

"(2) Restore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime.

"(3) Maintain that repeat offenders convicted of *non-violent, non-serious crimes like shoplifting and simple drug possession* will receive twice the normal sentence instead of a life sentence.

"(4) Save hundreds of millions of taxpayer dollars every year for at least 10 years. The state will no longer pay for housing or long-term health care for elderly, *low-risk, non-violent inmates* serving life sentences for *minor crimes*.

"(5) Prevent the early release of dangerous criminals who are currently being released early because jails and prisons are overcrowded with *low-risk, non-violent inmates* serving life sentences for *petty crimes*." (Voter Information Guide, Gen. Elec., *supra*, text of proposed law, § 1, p. 105, italics added.)

The foregoing materials expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those convicted of simple drug possession) who posed little or no risk to the public and did not deserve life sentences. Although arguably the materials implied virtually any level of firearm involvement would subject a person to a life sentence, we cannot simply look to these materials without taking into account the actual language of the enactment. To conclude, based on the materials, that inmates convicted of offenses involving mere possession of a firearm are ineligible for resentencing, would read out of existence voters' specification, in the statutory language itself, that disqualification under section 1170.126, subdivision (e)(2) is limited to situations in which, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Although the literal language of a statute does not prevail if it conflicts with lawmakers' intent (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; *People v. Belton* (1979) 23 Cal.3d 516, 526), it is nevertheless the most reliable indicator of that intent (*City of Santa Monica v. Gonzalez* (2008) 43

14.

Cal.4th 905, 919; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387).

It is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public. A felon who has been convicted of two or more serious and/or violent felonies in the past, and most recently had a firearm readily available for use, simply does not pose little or no risk to the public. "[T]he threat presented by a firearm increases in direct proportion to its accessibility. Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used." (*People v. Mendival* (1992) 2 Cal.App.4th 562, 573.) The same cannot necessarily be said about a firearm that is merely under the dominion and control of a person previously convicted of a felony. For instance, a firearm passed down through family members and currently kept in a safe deposit box by a convicted felon would be under his or her dominion and control, but would present little or no real danger.

## III. Disqualifying factors need not be pled or proven to a trier of fact beyond a reasonable doubt; hence, a trial court may examine relevant, reliable, admissible portions of the record of conviction to determine the existence of such a factor.

As previously described, defendant was convicted of his current offense based on stipulations he had suffered two prior strike convictions and, on June 4, 2004, possessed a handgun. As we have explained, and the trial court correctly found, mere possession of the firearm did not establish defendant was armed with the firearm so as to be disqualified from resentencing under the Act. In order to determine whether defendant was armed, the trial court decided it could look to the overall facts and circumstances of the case.

Defendant now says the trial court erred in considering facts neither pled nor proved to find him ineligible for resentencing under the Act. We conclude a

disqualifying factor contained in section 667, subdivision (e)(2)(C)(iii) or section 1170.12, subdivision (c)(2)(C)(iii) need not be pled and proved in the sense of being specifically alleged in an accusatory pleading and expressly either found by the trier of fact at trial of the current offense or admitted by the defendant.

As amended by the Act, the three strikes law provides in pertinent part that "[i]f a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not [a serious or violent felony as defined in the three strikes law, the defendant shall be sentenced as a second strike offender] *unless the prosecution pleads and proves* any of the following:  [¶] … [¶]  (iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C), italics added, 1170.12, subd. (c)(2)(C), italics added.)  Thus, when an *initial* sentencing that occurs after the Act's effective date is at issue, there is a clear statutory pleading and proof requirement with respect to factors that disqualify a defendant with two or more prior strike convictions from sentencing as a second strike offender.  (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 170; see *Kaulick*, *supra*, 215 Cal.App.4th at p. 1303, fn. 26.)

Fairly read, however, section 1170.126 does not impose the same requirements in connection with the procedure for determining whether an inmate already sentenced as a third strike offender is eligible for *resentencing* as a second strike offender.  (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1298-1299, fn. 21.)  Subdivision (e) of the statute provides: "An inmate is eligible for resentencing if:  [¶] … [¶]  (2) The inmate's current sentence was not imposed for any of the offenses *appearing in clauses* (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (Italics added.)  This language refers specifically to the disqualifying factors, and does

16.

not incorporate the pleading and proof requirements contained in other portions of sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C).

It is true, strictly speaking, that defendant's current sentence was not imposed for being armed during the commission of his current offense, and so was "not imposed for any of the offenses appearing" in section 667, subdivision (e)(2)(C)(i) through (iii) or section 1170.12, subdivision (c)(2)(C)(i) through (iii), as required by the literal language of section 1170.126, subdivision (e)(2). As we previously observed, however, the literal language of a statute does not prevail if it conflicts with the lawmakers' intent. (*Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735; *People v. Belton, supra,* 23 Cal.3d at p. 526.)

That voters did not intend disqualification under Proposition 36 to require pleading and proof of a formal offense or enhancement is readily apparent from their inclusion, as a disqualifying factor, of an inmate's intent, during commission of the current offense, to cause great bodily injury to another person. We are aware of no provision criminalizing, or permitting imposition of an additional sentence for, the mere intent to cause great bodily injury to another person. The drafters of the initiative knew how to require a separate offense or enhancement if desired. (See §§ 667, subd. (e)(2)(C)(i) [disqualifying inmate if current offense is controlled substance charge in which enumerated enhancement allegation was admitted or found true], 1170.12, subd. (c)(2)(C)(i) [same].)

Moreover, in order to effectuate the electorate's intent to leave, subject to indeterminate life sentences, those inmates perceived as posing a risk to public safety, section 1170.126, subdivision (e)(2) must be read as disqualifying from resentencing an inmate whose current sentence was imposed for an offense during the commission of which — whether through a formal element of the offense or enhancement, or mere conduct or other means — he or she used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person, regardless of whether such a factor was pled and proved. Such a construction does not, as defendant asserts,

17.

"read the 'plead and prove' requirement out of the statute." We reject defendant's claim that an inmate seeking resentencing pursuant to section 1170.126 has a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor. Subdivision (f) of section 1170.126 expressly provides that, "[u]pon receiving a petition for recall of sentence under this section, *the court shall determine* whether the petitioner satisfies the criteria in subdivision (e)." (Italics added.)

Of course, constitutional requirements supersede statutory language. Considered in conjunction with each other, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution require that each element of a crime or sentence enhancement be proved to the jury beyond a reasonable doubt. (*United States v. Gaudin* (1995) 515 U.S. 506, 509-510; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Jones* (1999) 75 Cal.App.4th 616, 631.) In addition, the United States Supreme Court has made clear that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.)[6] This is so whether the fact increases the statutory maximum penalty or a mandatory minimum penalty. (*Alleyne v. United States* (2013) 570 U.S. ___, ___ [133 S.Ct. 2151, 2160].) "Juries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty." (*Id*. at p. 2161, fn. 2.) "When a finding of

---

**6** "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." (*Blakely v. Washington* (2004) 542 U.S. 296, 303-304, italics omitted.)

fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (*Id*. at p. 2162.)

*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act. As the Court of Appeal explained in *Kaulick*, *supra*, 215 Cal.App.4th 1279:

> "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced.…

> "Moreover, the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws. (*Dillon v. United States* (2010) 560 U.S. 817, [828] (*Dillon*).) At issue in *Dillon* was a modification to the sentencing guideline range for the offense of which the defendant was convicted. The law provided that a prisoner's sentence could be modified downward when the range had been lowered; however, the law provided that a sentence could only be lowered if consistent with applicable policy statements.… The Supreme Court had already held that, in order to avoid constitutional problems, the federal sentencing guidelines were advisory, rather than mandatory. The issue in *Dillon* was whether the policy statement, which did not permit reducing a sentence below the amended range except to the extent the original term was below the original range, must also be rendered advisory. (*Id*. at p. [819].) The Supreme Court concluded that it remained mandatory. This was so because the statute allowing resentencing when the sentencing range was lowered was, itself, not a plenary resentencing in the usual sense. Instead, the statute simply authorized a limited adjustment to an otherwise final sentence. (*Id*. at p. [826].) The court stated, 'Notably, the sentence-modification proceedings authorized by [the statute] are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather [the statute] represents a congressional act of lenity intended to give prisoners the benefit of later

19.

enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.' (*Id*. at p. [828].) Such decisions, stated the court, simply do not implicate Sixth Amendment rights. ([*Id*. at pp. 828-829.])

"The language in *Dillon* is equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding … do not implicate Sixth Amendment issues." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1303-1305.)

We recognize that *Kaulick* was concerned with a trial court's discretionary determination whether an inmate who was eligible for resentencing nevertheless should not be resentenced due to his or her dangerousness. Its reasoning applies with equal force to the initial eligibility determination, however. A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed. In the case of a third strike offender such as defendant, that sentence is the indeterminate term of 25 years to life in prison that the trial court permissibly imposed at the time defendant was convicted of his current offense, "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citations.]" (*Blakely v. Washington, supra,* 542 U.S. at p. 303, italics omitted.) The trial court's determination in the section 1170.126 proceeding that defendant was armed with a firearm during the commission of his current offense did not increase the penalty to which defendant was already subject, but instead disqualified defendant from an act of lenity on the part of the electorate to which defendant was not constitutionally entitled.

Defendant argues, however, that at issue in this case is the nature of the *current* conviction. He says that while a trial court determines aggravating and mitigating circumstances for purposes of sentencing, "[t]he nature of a current offense is determined by the trier of fact based on the evidence at the trial .…" Because this is so, the argument runs, the trial court erred by going beyond the elements of the offense of which defendant was convicted and the evidence presented at trial to assess eligibility for resentencing. The evidence at trial established only that defendant possessed a firearm after having been convicted of a felony, and, as we have seen, possession does not necessarily constitute being armed with a firearm. Accordingly, defendant concludes, he is eligible for resentencing.

If we were concerned with the propriety of the *imposition of additional or aggravated punishment* based on the nature of defendant's current conviction, defendant's argument would have merit. (See, e.g., *People v. Wilson* (2013) 219 Cal.App.4th 500, 503-504, 515-516 [trial court improperly sentenced defendant under three strikes law; court could not have found prior offense to constitute strike without resolving factual dispute, and court may not impose sentence above statutory maximum based on disputed facts about prior conduct not admitted by defendant or implied by elements of offense]; *People v. Bautista* (2005) 125 Cal.App.4th 646, 654-655 [defendant was entitled, under federal constitutional law, to jury determination whether his current offense included personal use of firearm so as to make it a serious felony for purposes of imposition of § 667, subd. (a) enhancement]; *People v. Taylor* (2004) 118 Cal.App.4th 11, 22-23, 26-27 [for purposes of imposition of enhancement under § 667, subd. (a) for serious felony prior conviction, felony that does not qualify as serious felony as a matter of law under § 1192.7, subd. (c) may be found to constitute serious felony if prosecution pleads and proves fact necessary to establish statutorily defined conduct; whether *prior* conviction qualifies as serious felony is question of law for court to determine as determination is made solely based on record of conviction, but whether *current* offense

is serious felony is question of fact for jury to decide based on evidence presented at trial]; see also *People v. Lo Cicero* (1969) 71 Cal.2d 1186, 1192-1193 [because complete denial of opportunity for probation constitutes equivalent of increase in penalty, prior convictions rendering defendant ineligible for probation with respect to current offense must be pled and proved].)

In the present case, however, we are not concerned with the initial imposition of sentence. As we have explained, defendant has already had an indeterminate term of 25 years to life imposed. Although the Act refers to defendant's "current" offense (e.g., §§ 667, subd. (e)(2)(C)(i)-(iii), 1170.12, subd. (c)(2)(C)(i)-(iii)), the offense is "current" not because, as in the preceding cases, defendant is pending sentencing on it, but because it is his most recent conviction and the offense for which he is presently serving a sentence. Cases limiting consideration to the elements of the offense and evidence presented to the trier of fact do not constrain a court where, as here, the issue is eligibility for a lesser sentence than the one already properly imposed.[7] Like facts invoked to limit the ability to earn conduct credits, facts invoked to render an inmate ineligible for downward resentencing do not increase the penalty for a crime beyond the statutory maximum, and so need not be pled or proved. (See *People v. Lara* (2012) 54 Cal.4th 896, 901, 905-906.)[8]

It follows that a trial court determining eligibility for resentencing under the Act is not limited to a consideration of the elements of the current offense and the evidence that was presented at the trial (or plea proceedings) at which the defendant was convicted. Rather, the court may examine relevant, reliable, admissible portions of the record of

---

[7] Moreover, subdivision (e)(2) of section 1170.126 defines an inmate's eligibility for resentencing in terms of the offense or conduct for which the inmate's current *sentence* was imposed.

[8] We reject defendant's assertion disqualification "results in punishment beyond the doubled term to which the offender is otherwise presumptively eligible."

conviction to determine the existence or nonexistence of disqualifying factors. (See *People v. Bartow* (1996) 46 Cal.App.4th 1573, 1579 [threshold admissibility question is whether item is within entire record of conviction; if it is, court must determine whether rules of evidence authorize its admission].) This is consistent with voters' intent.[9]

## IV. <u>Because we cannot tell whether the trial court based its ineligibility finding on reliable, admissible portions of the record of conviction, we remand the matter for a new eligibility determination.</u>

In arguing defendant was ineligible for resentencing because he was armed with a firearm during commission of his current offense, the prosecutor relied on the facts stated in the appellate opinion affirming defendant's conviction and on portions of the preliminary hearing transcript, of which the prosecutor requested the court take judicial notice. As previously described, the appellate opinion stated its facts were taken from the report of the probation officer and defendant's motion to dismiss a felony strike allegation. In turn, the report of the probation officer recited, as circumstances of the present offense, "a summary of a report completed by the Bakersfield Police Department." The police report appears to have contained, inter alia, statements made to police by witnesses and by defendant. Neither the preliminary hearing transcript nor defendant's motion to dismiss the strike allegation are contained in the record of defendant's present appeal.

At the March 6, 2013, hearing, the trial court stated the court file was missing. Pursuant to the court's request, defense counsel presented the court with a transcript of the plea and stipulation, and the probation officer furnished a copy of the probation officer's report. After a break, the court stated it had read the transcript of the slow plea,

---

**9** Defendant suggests such an interpretation would allow a trial court to find arming, so as to disqualify an inmate from resentencing under the Act, even if an arming enhancement was pled but found not true by a jury, thereby running afoul of constitutional proscriptions against double jeopardy. As such a situation does not exist in the present case, we decline to issue what would amount to an advisory opinion thereon.

23.

the probation officer's report, and portions of the preliminary hearing transcript. The prosecutor argued the court could also consider the facts in the appellate opinion because of a special agreement, made in chambers at the time of the slow plea, that the rest of the facts of the case, beyond the stipulations, could be considered for sentencing.

Based on the language of sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C), requiring the prosecution to plead and prove a disqualifying factor, the trial court found defendant eligible to be considered for resentencing. At the hearing on the motion for reconsideration, however, the court determined it could look at the overall facts and circumstances of the case in determining eligibility. The court concluded defendant was armed with and used a firearm, and so was disqualified.

The term "record of conviction" has been "used technically, as equivalent to the record on appeal [citation], or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223; see *People v. Houck* (1998) 66 Cal.App.4th 350, 356 ["Considerations of reasonableness and fairness dictate that a 'record of conviction' include only those documents that reliably reflect the conduct of which a defendant was convicted."].) Police reports are not part of the record of conviction (see *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1521), nor are a defendant's statements made after conviction and recounted in a postconviction report of the probation officer (*People v. Trujillo* (2006) 40 Cal.4th 165, 179). The record of conviction does include, however, the preliminary hearing transcript (*People v. Reed, supra,* 13 Cal.4th at p. 223), transcript of the jury trial (*People v. Bartow, supra,* 46 Cal.App.4th at pp. 1579-1580), and the appellate record, including the appellate opinion (*People v. Woodell* (1998) 17 Cal.4th 448, 456). The probation officer's report may or may not be part of the record of conviction. (*People v. Reed, supra,* 13 Cal.4th at p. 230 [declining to decide the question].)

Even when an item is part of the record of conviction, it is not automatically relevant or admissible for a particular purpose. (See *People v. Trujillo, supra,* 40 Cal.4th at pp. 179-181; *People v. Woodell*, *supra*, 17 Cal.4th at p. 457; *People v. Guerrero* (1988) 44 Cal.3d 343, 356, fn. 1.) Moreover, its admission must comport with the rules of evidence, particularly the hearsay rule and exceptions thereto. (See *People v. Woodell, supra,* 17 Cal.4th at pp. 457-460; *People v. Reed, supra,* 13 Cal.4th at pp. 220, 224-228, 230-231; *People v. Bartow, supra,* 46 Cal.App.4th at pp. 1579-1580.)

The record before us is such that we cannot determine whether the materials considered by the trial court in finding defendant ineligible for resentencing, comport with the foregoing requirements. Accordingly, we find it appropriate to remand the matter to the trial court for a new hearing and determination on defendant's eligibility, at which only relevant, reliable, and admissible portions of the record of conviction are considered. If the trial court again finds defendant disqualified from resentencing under the Act, the court shall deny defendant's petition for recall of sentence. If the trial court determines defendant is eligible for resentencing, the court shall conduct further proceedings as specified in section 1170.126, subdivision (f).

**DISPOSITION**

The trial court's order is reversed.  The matter is remanded for a new hearing and determination on defendant's eligibility for resentencing.

_____
DETJEN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
LAPORTE, J.†

---

†     Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.