Filed 8/21/15  P. v. Mora CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DANIEL MORA,<br><br>      Defendant and Appellant. | D067203<br><br><br><br>(Super. Ct. No. SF85947) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Reversed and remanded.


Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Warren J. Williams and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

Daniel Mora appeals the trial court's order denying his petition to recall his sentence under the Three Strikes Reform Act. (Pen. Code, § 1170.126.)[1] Mora contends that the trial court erred by concluding that he was armed with a deadly weapon "[d]uring the commission of" his third strike offense. (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) For the reasons explained below, we agree and reverse the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 1994, Mora was an inmate at the George Bailey Detention Facility and shared a cell with one other inmate. While conducting a routine inspection of Mora's cell, Deputy Sheriffs Marco Carreon and Todd Norton discovered clothing shoved behind one of two drawers under the cell's bunk. The drawer in question was assigned to Mora. The deputies asked Mora, who was waiting in a dayroom, to come into the cell and remove the clothing. Mora did so and then returned to the dayroom. Carreon continued to search the cell and found more clothing stuffed around the drawer. Rather than ask Mora to return to the cell, Carreon got down on his hands and knees and removed the clothing himself. After removing the clothing, Carreon found a metal shank with a taped handle inside the guide track of the drawer.

Carreon placed the shank in his pocket and the two deputies finished their inspection of the cell block. The deputies then went to their control room and summoned

---

1 All further statutory references are to the Penal Code.

2 The facts are derived from the reporter's transcript from Mora's trial of the offense that is the subject of his petition to recall.

Mora over the loudspeaker. When Mora arrived at the gates of the control room, Carreon pulled the shank from his pocket and asked Mora whether he knew anything about it. Mora stated that the shank belonged to him.

Mora was charged with possession of a deadly weapon while confined in jail under section 4574, subdivision (a). He was convicted at a jury trial. Due to two strike prior convictions, one for burglary and one for robbery, Mora was sentenced to 25 years to life under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12). In 2014, Mora filed a petition to recall his sentence under the Three Strikes Reform Act. The trial court denied the petition, finding that Mora was statutorily ineligible for resentencing because he was armed with a deadly weapon during the commission of the crime.

DISCUSSION

I

Proposition 36, known as the Three Strikes Reform Act (Act), and passed by ballot measure in 2012, changed the requirements for sentencing for third strike offenders. Prior to the Act, an individual with two or more strike priors who was convicted of any new felony could be sentenced to an indeterminate life term. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 (*Yearwood*).) Under the Act, a life sentence is reserved for cases in which the third strike is serious or violent, or the prosecution has pled and proven an enumerated disqualifying fact. (*Yearwood*, at pp. 167-168.)

The Act also created a procedure permitting the resentencing of prisoners "serving an indeterminate term of imprisonment [under the Three Strikes law], whose sentence under [the A]ct would not have been an indeterminate life sentence." (§ 1170.126, subd.

3

(a).)  To obtain a new sentence under this procedure, "the prisoner must file a petition for a recall of sentence . . . in the trial court . . . within two years after the Act's effective date 'or at a later date upon a showing of good cause.' " (*Yearwood, supra*, 213 Cal.App.4th at p. 170.)  A prisoner who files a petition for recall is eligible for resentencing if three criteria are met:  "(1) the prisoner is serving an indeterminate life sentence for a crime that is not a serious or violent felony; (2) the life sentence was not imposed for any of the offenses appearing in sections 667, subdivision (e)(2)(C)[(i)-(iii)] and 1170.12, subdivision (c)(2)(C)[(i)-(iii)]; and (3) the inmate has no prior convictions for any of the offenses appearing in clause (iv) of section 667, subdivision (e)(2)(C) or clause (iv) of section 1170.129, subdivision (c)(2)(C)." (*Ibid.*)  If the trial court determines that the prisoner meets these three requirements, the court must resentence the prisoner as a second strike offender "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)

There is no dispute that Mora meets the first and third criteria.  The only issue on appeal is whether Mora's life sentence was imposed for an offense enumerated in sections 667, subdivision (e)(2)(C)(i)-(iii) and 1170.12, subdivision (c)(2)(C)(i)-(iii).  Under these statutes, a defendant is not eligible for resentencing if "the prosecution pleads and proves" one or more of three specified circumstances.  (§§ 667 subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)  One of the three circumstances is if "[d]uring the commission of the current [third strike] offense, the defendant used a firearm, *was armed with a firearm or deadly weapon*, or intended to cause great bodily injury to another person."  (§§ 667,

4

subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), italics added.)  As stated, the trial court found that Mora was ineligible for resentencing based on this exclusion.

II

Mora contends that he was not " 'armed' " within the meaning of these statutes during the commission of his third strike because the shank was found in a location that he could not easily access.  Mora also maintains that he does not qualify for a life sentence because the statutory language requires that the defendant be armed during the commission of a *separate* criminal offense.  The Attorney General responds that although the weapon was not in Mora's physical possession, he was armed within the meaning of the statutes.  Further, the law is settled that no separate, tethering offense is required under sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C).  We review these questions of statutory interpretation de novo.  (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1332.)

As an initial matter, we accept the Attorney General's contention that no separate underlying felony was required to find that Mora was armed during the commission of the crime of possession of a weapon in county jail under section 4574, subdivision (a). Although no case has addressed this specific offense, several cases have rejected the same argument for the analogous crime of possession of a firearm by a felon under former section 12021, subdivision (a) (renumbered § 29800, subd. (a)(1)).  (See *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1038 (*Osuna*) ["we reject the claims that disqualification for resentencing under Proposition 36 requires an underlying offense or enhancement to have been pled and proved, and that a conviction for possession of a

5

firearm cannot constitute being 'armed' with a firearm for eligibility purposes"]; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 797 [rejecting claim that possessory offenses cannot fall under the armed-with-a-firearm exclusion "without another separate or tethering offense"]; *People v. Elder* (2014) 227 Cal.App.4th 1308, 1312 (*Elder*) ["For Purposes of [§] 1170.126, Unlawful Possession of a Firearm Can Constitute Being Armed During an Offense"].)  However, we reject the Attorney General's assertion that Mora's record of conviction showed that he was armed during the commission of the third strike offense within the meaning of the applicable statutes.

" '[A]rmed with a firearm' has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively." (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1051 (*Blakely*).)  This definition applies to the arming exclusion to resentencing eligibility at issue in this case.  (*Ibid.*)  In *People v. White* (2014) 223 Cal.App.4th 512 (*White*), this court held that where "the record establishes that a defendant convicted under the pre-Proposition 36 version of the Three Strikes law as a third strike offender of possession of a firearm by a felon was armed with the firearm during the commission of that offense, the armed-with-a-firearm exclusion applies and the defendant is not entitled to resentencing relief under the Reform Act." (*Id.* at p. 519.)  The defendant's record of conviction in *White* showed that he was in physical possession of a deadly weapon and, therefore, had the weapon available for immediate use at the time of his arrest.  (*Id*. at p. 524.)  The same is not true of the facts contained in Mora's record of conviction.

6

At the time of White's arrest, a search warrant had been issued for his home and he was under police surveillance. The officers conducting the surveillance saw White walking toward his truck carrying "a rolled-up cloth (later found to be a pair of sweatpants) with an object inside. Believing White might be armed, officers moved toward[] him and drew their guns. White began to run and reached inside the rolled-up sweatpants he was carrying. He then looked behind him, saw the officers coming toward[] him, and threw both the sweatpants and the object inside the sweatpants into the bed of his truck. White was taken into custody, and the object—a loaded Taurus .357-magnum revolver—was recovered from the bed of the truck. The officers also found bullets for that gun inside the truck." (*White, supra*, 223 Cal.App.4th at p. 520.)

White was convicted of possession of a firearm by a felon under former section 12021, subdivision (a). (*White, supra*, 223 Cal.App.4th at p. 520.) After the trial court found true sentence enhancement allegations that White had sustained three strike priors and one prior prison term, the court sentenced him as a third strike offender to 25 years to life. (*Ibid.*) White petitioned to recall his life sentence under section 1170.126. At the hearing on the petition, White's counsel acknowledged that his client had been armed during the commission of the offense. The trial court denied the petition under the resentencing eligibility exclusion at issue here. (*White,* at p. 522.) This court affirmed the denial, concluding that "the record of conviction establishe[d] that White's life sentence was imposed because he was in *physical possession* of a firearm when the police officers approached him, and, thus, was armed with a firearm during the commission of his current offense." (*Id.* at p. 524, italics added.)

7

In reaching this conclusion, the *White* court noted that while the act of being armed with a deadly weapon necessarily requires possession of that weapon, the inverse is not true. (*White, supra*, 223 Cal.App.4th at p. 524.) "For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*Ibid*.) Importantly, White's record of conviction showed not just "constructive possession" (dominion and control) but that White "had actual physical possession of the firearm." (*Id*. at p. 525.)

Constructive possession, therefore, is not sufficient to establish that a defendant is armed for purposes of the resentencing exclusion at issue here. Rather, the prosecution must show that the weapon was available for the defendant's immediate use during the commission of the crime. Other cases that have considered the exclusion have highlighted this distinction. In *Blakely,* the Court of Appeal recognized both that the exclusion does not apply automatically to any conviction for possession of a firearm by a felon and that "[a] firearm can be under a person's dominion and control without it being available for use." (*Blakely, supra,* 225 Cal.App.4th at p. 1052; see *Osuna, supra,* 225 Cal.App.4th at p. 1030; *Elder, supra,* 227 Cal.App.4th at pp. 1313-1314 ["[N]ot *every* commitment offense for unlawful possession . . . *necessarily* involves being armed with the [weapon], if the [weapon] is not otherwise available for immediate use in connection with its possession, e.g., where it is under a defendant's dominion and control in a location not readily accessible to him at the time of its discovery."].)

8

Relying on *People v. Bland* (1995) 10 Cal.4th 991 (*Bland*), the Attorney General maintains that Mora need not have been in physical possession of the weapon, and that his constructive possession of the weapon in this case is sufficient for the resentencing exclusion to apply. Constructive possession is established by " 'showing a knowing exercise of dominion and control.' " (*White, supra*, 223 Cal.App.4th at p. 524.) Mora's admission that the weapon was his established constructive possession. However, Mora's constructive possession did not establish that he was armed, i.e., that he had the weapon "available for use, either offensively or defensively." (*Blakely, supra*, 225 Cal.App.4th at p. 1051.)

*Bland* involved the question whether a defendant could be armed for purposes of a conviction for a firearm enhancement under section 12022, subdivision (a)(2). The trial court found that the defendant's constructive possession of a semiautomatic gun was sufficient to find that he was armed within the meaning of the enhancement statute during the commission of the underlying offense of possession of cocaine base for the purpose of sale. The Court of Appeal struck the enhancement because the semiautomatic weapon was not " 'available' for defendant's use in committing the" underlying felony. (*Bland, supra,* 10 Cal.4th at p. 996.) The appellate court's decision was based on the facts that the weapon was recovered during a search of the defendant's house from under the defendant's bed (in the same room where the drugs were found), while the defendant was in police custody outside. (*Id.* at p. 995.)

The California Supreme Court reversed the Court of Appeal, concluding that from the "evidence that the assault weapon was kept in defendant's bedroom near the drugs, the

9

jury could reasonable infer that, at some point during the felonious drug possession, defendant was physically present with both the drugs and the weapon, giving him ready access to the assault rifle to aid his commission of the drug offense." (*Bland, supra,* 10 Cal.4th at p. 1000.) The court's decision turned on the fact that the underlying felony of drug possession was a continuing offense. Because the drug possession offense was ongoing, the court concluded that it was "immaterial whether defendant was present when police seized the assault rifle together with the cache of crack cocaine." (*Ibid.*) The evidence supported a finding that the defendant "had the firearm available for use in furtherance of the drug offense at [some point in] time during his possession of the drugs." (*Ibid.*)

Unlike the enhancement conviction at issue in *Bland*, the charge of possession of a weapon for purposes of the exclusion for being armed with a deadly weapon at issue here does not require a separate underlying offense to which the arming attaches. For this reason, the analysis in *Bland* of what constitutes being armed for purposes of a firearm enhancement conviction does not align with the analysis of the term in this context. Indeed, if the term were interpreted in the same manner here, all prisoners convicted of the offense of felon in possession of a firearm or possession of a deadly weapon in jail would be automatically excluded from resentencing. Such a result does not comport with the exclusionary provision's directive that the prosecutor plead and prove that during the commission of the offense, the defendant was armed with a deadly weapon. (*Blakely, supra*, 225 Cal.App.4th at p. 1057.)

10

"To conclude . . . inmates convicted of offenses involving mere possession of a firearm are ineligible for resentencing, would read out of existence voters' specification . . . that disqualification under section 1170.126, subdivision (e)(2) is limited to situations in which, '[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' " (*Blakely, supra*, 225 Cal.App.4th at p. 1057.) Rather, to find a prisoner was armed in the commission of an offense, and therefore ineligible for resentencing, the weapon must be "available for use, either offensively or defensively." (*Bland, supra*, 10 Cal.4th at p. 997; *Blakely,* at p. 1048.)[3]

### III

Mora's record of conviction shows that he was not armed with the shank at the time he was found to be in possession of the weapon in violation of section 4574, subdivision (a). The shank was hidden in a location that Mora could not easily access and it was undisputed that Mora was not present at the time the weapon was discovered.

---

[3] Unlike this case, which involves solely a conviction under section 4574, subdivision (a), cases cited by the Attorney General from the Fifth Appellate District involve convictions for felon in possession of a firearm under former section 12021, subdivision (a) *as well as* contemporaneous convictions for other serious felony offenses. (See *People v. Superior Court (Martinez)* (2014) 225 Cal.App.4th 979, 985 [defendant also convicted "of possession of two deadly weapons, both sawed-off shotguns [citation]; possession of heroin [citations]; [and] possession of a controlled substance while armed with a loaded, operable firearm [citation]; . . . and three misdemeanors."]; *People v. Superior Court (Cervantes)* (2014) 225 Cal.App.4th 1007, 1011 [defendant also convicted of "selling heroin [citation], possessing heroin for sale [citation], . . . and making a building available for preparing or storing heroin"].) To the extent the Fifth Appellate District concluded in *Elder* that constructive possession alone, without a finding that the defendant had the weapon available for immediate use at the time of arrest, is sufficient to preclude resentencing, we disagree.

These facts establish that the shank was not available for Mora's immediate use at the time of the crime. The trial court, therefore, erred by concluding that Mora was armed with a deadly weapon at the time of the commission of his third strike offense and was thus statutorily ineligible for resentencing under sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii).

## DISPOSITION

The trial court's order is reversed. The matter is remanded for a determination of Mora's eligibility for resentencing consistent with this opinion.

AARON, J.

WE CONCUR:

McDONALD, Acting P. J.

McINTYRE, J.