Filed 12/22/14

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ROBERT LUNA FRANCO,<br><br>  Defendant and Appellant. | F067223<br><br>(Super. Ct. No. SC072462A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Michael B. Lewis, Judge.

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, part II of the Discussion, and the Disposition are certified for publication.

**SEE CONCURRING OPINION**

## INTRODUCTION

The Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies. If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.[1] (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

After the Act went into effect, Robert Luna Franco (defendant), an inmate serving a term of 25 years to life following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for recall of sentence and resentencing under the Act. Following a hearing addressing the facts pertaining to risk of danger, the petition was denied.

In the published portion of this opinion, we explain that while a trial court has the authority to obtain a supplemental probation officer's report at the stage of the proceedings at which it must determine whether resentencing a petitioner would pose an unreasonable risk of danger to public safety, it is not required to do so. In the unpublished portion, we reject defendant's claims that denial of his petition constituted an abuse of discretion because the trial court failed to make the requisite finding, relied on facts unsupported and contradicted by the record, and misapprehended the scope of its discretion. We also explain the standard of proof applicable to a trial court's ruling under section 1170.126. Finally, we explain that recently enacted section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (f). We affirm.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

2.

**FACTS AND PROCEDURAL HISTORY**[*]

On December 7, 1997, Bakersfield police officers searched the home of Sylvia Rodriguez, having been informed she was selling heroin there.[2] Through the open front door, an officer could see defendant inside a bedroom. Defendant appeared nervous, had "widened eyes" and was "'somewhat fidgety.'" Defendant was seen to then go into the bathroom of the home. During the search, a tinfoil bindle containing 39 milligrams of heroin, a usable amount, was found under a floor mat in that bathroom. Defendant admitted being a heroin user, and exhibited physical symptoms indicative of heroin use.

A jury convicted defendant of possession of heroin (Health & Saf. Code, § 11350, subd. (a)) and he was found to have suffered two prior strike convictions. On June 9, 1998, he was sentenced to prison for 25 years to life.

On February 25, 2013, defendant filed a petition to recall his sentence and be resentenced pursuant to the Act. He represented that his strike record consisted of two 1990 convictions for first degree burglary and a 1992 conviction for attempted robbery, and asked to be resentenced to a total term of 96 months (the upper term for his commitment offense, doubled pursuant to § 667, subd. (e)(1), plus one year for each of his prior prison terms pursuant to § 667.5, subd. (b)).

The People opposed the petition. They argued defendant's release would pose an unreasonable risk of danger to public safety. They pointed to defendant's nine adult convictions, three of which were strikes (defendant also had two juvenile adjudications for strike offenses); the facts of defendant's strike offenses; the "continuous life of crime" defendant led before and after his strike convictions; and defendant's disciplinary record

---

[*] See footnote, *ante*, page 1.

[2] The facts are taken from our opinion in defendant's prior appeal. (*People v. Franco* (Apr. 29, 1999, F031001 [nonpub. opn.].) By separate order, we have taken judicial notice of the appellate record in that case.

3.

and record of rehabilitation while incarcerated. The People represented defendant had a rules violation report from July 2000, in which he and another inmate were engaged in mutual combat; a rules violation report from October 2009, in which defendant was involved in a fight with his cellmate, during which defendant stabbed the cellmate with a pencil and then a pen[3]; and a rules violation report from January 2012, in which defendant was involved in a fight with another inmate. The People also pointed to a prison record in which defendant admitted he had used heroin since the age of 14 and considered himself a drug addict, yet no record showed he attended any drug or alcohol classes. The People located prison "chronos" showing defendant participated in adult basic education, GED, and graphic arts classes, but found no record for vocational or job training or any work history. The People also pointed to defendant's lack of parole plans.

Defendant did not file a written response or provide any information concerning his in-prison efforts at rehabilitation or postrelease plans (if any).

The petition was heard on March 27, 2013. Defense counsel argued defendant, who had "served 196 months for a dime bag of heroin," was the type of person voters wanted to give an opportunity to rejoin society. Counsel further argued that getting into some sort of altercation a few times in the course of 16 years in prison was "not unreasonable behavior given the violent and difficult environment" in which prisoners find themselves.

The court noted it was allowed to consider the inmate's current position, and whether he presented an "extended" danger to society. It stated: "If we look at [defendant's] current criminal history, there is an indication that there was a … rule violation in the year of 2000 related to physical violence and confrontation in the institution. There was an additional [rules violation report] in 2009 that causes the Court some grave concern in that that was an assault where he actually inflicted injury on

---

**3** We discuss this incident in more detail, *post*.

4.

another individual using a pen or a pencil.  [¶]  My concern about that is that even after that assault on someone else, there appeared to have been a … rule violation, but there is not any indication that the institution felt it was sufficiently significant to warrant criminal prosecution."  After a discussion between the court and prosecutor about why some in-prison offenses were referred for prosecution and others were not, the court stated:

> "[I]n light of the fact that there is the indication from his … file that he actually stabbed a person with a pencil or a pen, I am going to at this point deny the petition under 1170.126.
>
> "[Defense counsel], at this point, without further foundation for making a determination as to future inappropriate or unnecessary risk or danger that he represents, since this incident occurred in 2009, the Court has some concerns and will deny the petition at this time based on those concerns."

## DISCUSSION

**I.** **THE COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE PETITION.**[*]

Defendant gives several reasons why, he claims, the court abused its discretion in denying the petition.[4]  Before addressing the issues he specifically raises, however, we explain the interplay, in the section 1170.126 context, between the abuse of discretion

---

[*]    See footnote, *ante*, page 1.

[4]    Defendant's indeterminate third strike term was imposed by the Honorable Jon E. Stuebbe.  The section 1170.126 petition was heard by the Honorable Michael B. Lewis.  Defendant contends the matter must be reversed and remanded so it can be heard by Judge Stuebbe, as required by section 1170.126, subdivision (j).  Although Judge Stuebbe was an active member of the Kern County Superior Court bench at the time the petition was heard — and so should have been the judge to hear it (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1301 (*Kaulick*)) — he is no longer listed on the roster of superior court judges posted on the official Web site of the Judicial Branch of California.  (Cal. Cts., Jud. Branch Home, Super. Cts. Judges Roster, at <http://www.courts.ca.gov/2948.htm> [as of Dec. 22, 2014].)  This being the case, he is not now available to hear the petition, so a remand for him to do so would serve no purpose.  Accordingly, we do not further address that issue.

5.

and preponderance of the evidence standards.  We do so because there seems to be confusion on this subject, and because defendant challenges the trial court's reliance on the 2009 in-prison incident as unsupported by the record.[5]

**A**

1. **THE TRIAL COURT'S ULTIMATE DETERMINATION WHETHER TO RESENTENCE A DEFENDANT IS MADE IN THE COURT'S DISCRETION.  THE STANDARD OF REVIEW IS ABUSE OF DISCRETION.**

In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.[6]  (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979,

---

[5]     As an example, the Attorney General presents the core issue as being whether the trial court properly found, by a preponderance of the evidence, that resentencing defendant would pose an unreasonable risk of danger to public safety.  Defendant initially says a finding of unreasonable danger must be supported by a preponderance of the evidence and is subject to review for substantial evidence, although the court's determination whether to resentence a defendant under the Act is a discretionary one.

For the first time in his reply brief, defendant suggests that under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny, the prosecution must establish and the trial court find, beyond a reasonable doubt, that an inmate petitioning for recall of sentence under the Act constitutes an unreasonable risk of danger to the public if the inmate's petition is to be denied.  Aside from the fact points raised for the first time in a reply brief generally will not be considered (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2; *People v. Jackson* (1981) 121 Cal.App.3d 862, 873), we have rejected the claim *Apprendi* requires that facts disqualifying an inmate from resentencing under the Act must be proven beyond a reasonable doubt (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1060-1062; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1039-1040).  In our view, the same reasoning and analysis mandates rejection of defendant's claim here.  (See *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076; *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1305.)

[6]     "An inmate is eligible for resentencing if:  [¶]  (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.  [¶]  (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or

989.)  If the inmate satisfies all three criteria, as did defendant, he or she "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  In exercising this discretion, "the court may consider: [¶]  (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;  [¶]  (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (*Id.*, subd. (g).)

The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion.  "'Discretion is the power to make the decision, one way or the other.'  [Citation.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)  "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]'  [Citation.]"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

> "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or

---

clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.  [¶]  (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."  (§ 1170.126, subd. (e).)

arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination … will not be set aside on review."' [Citation.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily … without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) "An abuse of discretion is shown when the trial court applies the wrong legal standard. [Citation.]" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

Under the clear language of section 1170.126, we review the trial court's ultimate determination whether to resentence a petitioner for abuse of discretion. Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.)

2.  **THE BURDEN OF PROOF BY PREPONDERANCE OF THE EVIDENCE APPLIES TO PROOF OF THE FACTS, NOT TO THE TRIAL COURT'S ULTIMATE DETERMINATION.**

Division Three of the Second District Court of Appeal has stated that, where a court's discretion under section 1170.126, subdivision (f) is concerned, the People bear the burden of proving "dangerousness" by a preponderance of the evidence. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1305 & fn. 25; see Evid. Code, § 115.) That court determined this is so — and the *Apprendi* line of cases do not apply — because "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all." (*Kaulick*, *supra*, at p. 1303.)

8.

We agree with *Kaulick* that the applicable standard is preponderance of the evidence.[7] This does not mean, however, that the trial court must apply that standard in making its ultimate determination whether to resentence a petitioner, or we must review that determination for substantial evidence.[8] Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation for resentencing to be denied. The language of section 1170.126, subdivision (f) expressly provides a petitioner shall be resentenced unless the court, in its discretion, makes a determination that resentencing would pose an unreasonable risk of danger. The statute does not say the petitioner shall be resentenced unless the People prove resentencing would pose such a risk. Considering the language of subdivisions (f) and (g) of section 1170.126, we conclude the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made.[9] Stated another way, evidence

---

[7] We have previously discussed *Kaulick* in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (*People v. Blakely*, *supra*, 225 Cal.App.4th at pp. 1058, 1060-1061; *People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act, a subject not before us in our prior cases.

[8] The substantial evidence test applies to an appellate court's review of findings made under the preponderance of the evidence standard. (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.) Under that test, the appellate court reviews the record in the light most favorable to the challenged finding, to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the finding by a preponderance of the evidence. The appellate court "resolve[s] all conflicts in the evidence and questions of credibility in favor of the [finding], and … indulge[s] every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]" (*Ibid.*)

[9] Courts and parties have assumed whatever burden exists is on the People. (E.g., *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075; *Kaulick*, *supra*, 215 Cal.App.4th at

9.

showing a petitioner poses a risk of danger to public safety must be proven by the People by a preponderance. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by facts established by a preponderance, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See *In re Robert L.*, *supra*, 21 Cal.App.4th at pp. 1065-1067 [discussing abuse of discretion and preponderance of evidence standards].)

Such an interpretation is consistent with California's noncapital sentencing scheme.[10] Under the determinate sentencing law (DSL) as it existed prior to *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid.*). Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to

---

p. 1301, fn. 25.) Such allocation is in harmony with the language of section 1170.126, subdivision (f) that an eligible petitioner "shall be resentenced … unless" the court makes the required determination.

[10] The determination of the appropriate penalty in a capital case "'is "essentially moral and normative …, and therefore … there is no burden of proof or burden of persuasion. [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1362.)

the particular sentencing determination. (*Ibid*.; see former Cal. Rules of Court, rule 4.420(b).) Even after the DSL was reformed and amended in response to *Cunningham*, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)[11]

In *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham,* "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (Italics added.)

The trial court's ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation "is not equivalent to a factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an

---

**11** After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

unreasonable risk of danger to public safety. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means "'more likely than not'"].)

*Kaulick* found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court's exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court can base the ultimate determination resentencing a petitioner would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself. Nevertheless, we believe it supports our interpretation. *Kaulick* stated, in part: "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, *unless certain facts are established*, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, *a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury*." (*Id.* at p. 1303, italics added.) The court further stated: "[I]t is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, *in exercising its discretion* to impose that penalty, may rely on *factors established by a preponderance of the evidence*. [Citation.]" (*Id.* at p. 1305, italics added.)

To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act. Nor is the court's ultimate determination subject to substantial evidence review. Rather, its

12.

finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) The facts or evidence upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence. If a factor (for example, that the petitioner recently committed a battery, is violent due to repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689-691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

**B**

Defendant contends the trial court never actually made a finding that the preponderance of the evidence showed resentencing defendant would pose an unreasonable risk to public safety. As we explained, *ante*, the trial court was not required to find, by a preponderance of the evidence, that resentencing defendant would pose an unreasonable risk of danger to public safety. Subdivision (f) of section 1170.126 clearly sets out the determination the court was required to make, and it is apparent, from the oral and written submissions of the parties and the court's comments, that the court was aware of the law on this point. (See Evid. Code, § 664; *People v. Diaz* (1992) 3 Cal.4th 495, 567.) Although it would have been better for the court expressly to state its determination resentencing defendant would pose an unreasonable risk of danger to public safety, its comments and ruling adequately conveyed its intent in this regard. (Cf. *People v. Paul* (1998) 18 Cal.4th 698, 706-707 [verdict should be read in light of charging instrument and plea entered by defendant; form of verdict generally is

13.

immaterial so long as jury's intent to convict clearly may be seen]; *People v. Flohr* (1939) 30 Cal.App.2d 576, 581 [same].)

C

Defendant next contends the trial court erred by relying on facts that were unsupported and contradicted by the record. He points to the court's reliance on the 2009 incident in which, he says, the court determined prison authorities found defendant guilty of, and disciplined him for, battery on an inmate with a weapon, whereas defendant actually was found guilty of and disciplined for the lesser offense of simple battery, without a weapon and without injury. Because the court's sole basis for denying the petition was its misapprehension of the record evidence, defendant argues, its decision must be reversed and the matter remanded for a new determination based on the true facts.

The rules violation reports, photographs, and findings concerning the 2009 incident were before the court as exhibit F of the People's opposition to the petition. Correctional Officer Day reported hearing noise that sounded like a fight coming from cell 239 on the morning of October 1, 2009. The cell was assigned to defendant and Inmate Greenhaw, both of whom were inside at the time. Greenhaw had abrasions/scratches to the stomach area and left side; a swollen area, abrasion/scratch, and pain to the right hand; and a swollen area on the left hand. Defendant had a cut/laceration/slash over his right eye and right cheek, and a bruised area on his left knee. Officer Sanchez searched the cell and discovered a pen wrapped with tape and a broken pencil. The pen was approximately six inches long and the pencil was approximately eight inches long. Sanchez observed the injuries to Greenhaw and determined they were consistent with being struck with a weapon. Defendant was charged with battery on an inmate with a weapon.

On October 5, 2009, Correctional Lieutenant Smith received "reliable confidential information" that during the incident, defendant stabbed Greenhaw in the rib cage with a

14.

pencil, breaking the pencil in the process. Defendant then stabbed Greenhaw in the abdominal area with the broken pencil. Realizing the broken pencil was not adequate, defendant retrieved a pen from a shelf and attempted to stab Greenhaw a third time.

A disciplinary hearing was held before a senior hearing officer on October 28, 2009. Defendant pled not guilty to the charge of battery on an inmate with a weapon, then stated: "'It was my pen. He would not allow me to wrap tape on a pen and use it on him. It was an argument that got heated and out of hand.'"

At the conclusion of the hearing, defendant was found not guilty of the charged offense, but guilty of violating the lesser included offense of fighting with the use of a weapon. The hearing officer concluded a preponderance of the evidence presented at the hearing did not substantiate the original charge; however, the lesser charge was substantiated by, inter alia, the contents of Day's report, which included Sanchez's finding of the pen and broken pencil and observation of injuries to Greenhaw that were consistent with being struck with a weapon; the medical report on Greenhaw, which reflected he suffered injuries consistent with being involved in a fight with the use of a weapon; and the crime incident report, which reflected that Sanchez observed injuries to defendant's face consistent with being struck by several blows, and injuries to Greenhaw's abdomen/rib area that were consistent with being struck with a weapon.[12] As a result, defendant was assessed a credit forfeiture of 180 days, among other penalties.

On December 2, 2009, Associate Warden Hernandez, the chief disciplinary officer, reduced the finding to battery on a prisoner with no serious injury and ordered a corresponding reduction of credit forfeiture to 90 days. Hernandez's report stated the

---

[12] In his report, Sanchez elaborated that, based on his training and experience, the wounds to Greenhaw's abdomen and left rib cage region could have been caused by a stabbing/slash type weapon or weapons. After examining the broken pencil and pen, Sanchez opined they were utilized during the incident, which was consistent with Greenhaw's injuries.

15.

finding was reduced in the interest of justice, and explained the guilty finding was appropriate, but there was no offense of fighting with the use of a weapon listed in any of the disciplinary schedules.[13] As a result, since the senior hearing officer found defendant not guilty of the original offense of battery on an inmate with a weapon, the finding was reduced to battery on a prisoner with no serious injury.

As we explained, *ante*, where a proceeding under section 1170.126 is involved, the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made. We review those facts for substantial evidence.

In arguing the trial court relied on facts unsupported and contradicted by the record, defendant focuses on the disciplinary *findings* made by prison authorities. The actual evidence before those authorities was also before the trial court, however, and we believe its comments show it relied on that information. Substantial evidence supports the trial court's findings, implicitly made by a preponderance of the evidence, that defendant actually stabbed and inflicted injury (albeit not seriously) on another inmate with a pen or pencil. This being the case, the trial court did not err by relying on the 2009 incident as the basis for its determination resentencing defendant would pose an unreasonable risk of danger to public safety, regardless of the fact prison authorities did not find defendant guilty of battery with a weapon. (Cf. *People v. Towne* (2008) 44 Cal.4th 63, 83-89 [in selecting appropriate sentence, trial court may take into account all evidence related to defendant's conduct in committing crime, including evidence underlying counts of which defendant was acquitted].)

---

[13]    Section 3323 of title 15 of the California Code of Regulations sets out the various disciplinary credit forfeiture schedules.

## D

1. **THE TRIAL COURT DID NOT MISAPPREHEND THE SCOPE OF ITS DISCRETION.**

Defendant contends the trial court misapprehended the scope of its discretion. He essentially argues sentence reduction under the Act is now the rule, not the exception; hence, trial courts have only limited discretion in denying relief on the ground of unreasonable danger to public safety. We reject defendant's reasoning and conclusions.

Defendant points to the syntax of section 1170.126, subdivision (f). Relying on *People v. Guinn* (1994) 28 Cal.App.4th 1130, 1141-1142, 1145 and its progeny (e.g., *People v. Murray* (2012) 203 Cal.App.4th 277, 282; *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1089), all of which deal with section 190.5, subdivision (b),[14] defendant contends the "shall"/"unless" formulation employed in subdivision (f) of section 1170.126 "creates in the petitioner a presumption and an expectation of being resentenced as a second striker .…" He reasons that, because resentencing an eligible petitioner to a second strike term is the "'generally mandatory' disposition," a trial court retains only "'circumscribed' discretion upon proof of an 'unreasonable' danger to 'public safety' to leave intact the more draconian punishment that [the Act] now abolishes."

The California Supreme Court has recently disapproved the cases relied on by defendant. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370, 1387.) Leaving aside constitutional questions raised by establishing a presumption in favor of life without parole for juveniles after the United States Supreme Court's opinion in *Miller v. Alabama*

---

**14** Section 190.5, subdivision (b) provides, in pertinent part: "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances … has been found to be true …, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

17.

(2012) 567 U.S. ___ [132 S.Ct. 2455], the state high court's review of the text of section 190.5, subdivision (b) led it to conclude the syntax is ambiguous concerning any presumption. The court stated: "It is not unreasonable to read this text … to mean that a court 'shall' impose life without parole unless 'at the discretion of the court' a sentence of 25 years to life appears more appropriate. [Citation.] But it is equally reasonable to read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option. The text of section 190.5[, subdivision ](b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence." (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1371.)

The same example can be applied to the syntax of section 1170.126, subdivision (f). Thus, we do not agree with defendant that courts have only limited discretion to deny resentencing. A court considering whether to resentence an eligible petitioner under section 1170.126, subdivision (f) has circumscribed discretion in the sense it can only refuse to resentence if it finds that to do so would pose an unreasonable risk of danger to public safety on the facts of the particular case before it. This does not mean, however, its discretion is circumscribed in the sense it can only find dangerousness in extraordinary cases. To the contrary, it can do so in any case in which such a finding is rational under the totality of the circumstances.

Such a conclusion comports with the plain language of the statute. Moreover, interpreting the statute to find a strong presumption in favor of resentencing that will only be overcome in an extraordinary case, would run directly contrary to the intent of the voters in passing the Act. (See *People v. Gutierrez, supra,* 58 Cal.4th at pp. 1371-1372 [examining legislative history and voter intent in attempt to resolve statutory ambiguity].)

18.

As we stated in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "'[e]nhancing public safety was a key purpose of the Act' [citation]." Thus, although one purpose of the Act was to save taxpayer dollars (*People v. Osuna*, *supra*, at p. 1037), "[i]t is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but *only* to those who were perceived as nondangerous or posing little or no risk to the public." (*Id*. at p. 1038, second italics added.)

Had voters intended to permit retention of an indeterminate term only in extraordinary cases, they would have said so in subdivision (f) of section 1170.126, rather than employing language that affords a court discretion to find dangerousness. They also would not have afforded the court the power to consider any evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of the statute. Although voters could have permitted automatic resentencing, under any and all circumstances, of those eligible therefor, they did not do so. This demonstrates a recognition of two highly plausible scenarios: (1) Some inmates sentenced to indeterminate terms under the original version of the three strikes law for crimes not defined as serious or violent felonies may have started out not posing any greater risk of danger than recidivists who will now be sentenced to determinate terms as second strike offenders under the prospective provisions of the Act, but have become violent or otherwise dangerous while imprisoned, or (2) Enough time might have passed since some inmates committed their criminal offenses so that those offenses no longer make such inmates dangerous, but other facts do. In light of the Act's key purpose in enhancing public safety, we find it apparent voters intended trial courts to determine resentencing would pose an unreasonable risk of danger whenever it was reasonable to do so under the circumstances of a particular case, rather than to be able to make such a finding only in extraordinary cases.

19.

The foregoing essentially answers defendant's analogizing of the resentencing procedure under the Act to the striking of prior serious and/or violent felony allegations under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). In *Romero*, the California Supreme Court held that trial courts retain discretion to strike, in furtherance of justice under section 1385, subdivision (a), prior felony conviction allegations in cases brought under the three strikes law. (*Romero*, *supra*, at pp. 529-530.) The court subsequently clarified, however, that in deciding whether to do so, or reviewing such a ruling, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Because the three strikes law was intended to restrict courts' discretion in sentencing repeat offenders, the state high court determined there were "stringent standards" sentencing courts must follow in order to find a defendant should be treated as falling outside the three strikes scheme. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court explained:

> "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.
>
> "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law

may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] … Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

As we explained in *People v. Blakely*, *supra*, 225 Cal.App.4th at page 1054, "The purpose of the three strikes law has been variously stated as being '"to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses"' [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]." Because public safety remains a key purpose of the law under the Act, we reject defendant's assertion that a section 1170.126 proceeding is the converse of a *Romero* determination, so that any refusal to resentence an eligible inmate must be subjected to the same rigorous scrutiny as the granting of a *Romero* motion.

"In enacting section 1170.126[, subdivision (f)] as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now" be sentenced to a lesser term. (*People v. Blakely*, *supra*, 225 Cal.App.4th at p. 1054.) Rather than constricting the trial court's discretion to leave intact a defendant's original sentence, we read the language of section 1170.126, subdivisions (f) and (g) as granting trial courts unfettered discretion to determine, on the facts and circumstances of each

21.

case, whether resentencing the petitioner would pose an unreasonable risk of danger to public safety. Such an interpretation fully comports with the intent of the voters in enacting the Act. Constraining trial courts' discretion to require resentencing except in extraordinary cases, manifestly does not.

   2. **SECTION 1170.18, SUBDIVISION (C), ENACTED PURSUANT TO PROPOSITION 47, DOES NOT MODIFY SECTION 1170.126, SUBDIVISION (F).**

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47). It went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).) Insofar as is pertinent here, Proposition 47 renders misdemeanors certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision — section 1170.18 — by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor … unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id*., subd. (b).)[15]

Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet — and nowhere called to voters' attention — is the provision at issue in the present appeal. Subdivision (c) of section 1170.18 provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning

---

**15**    Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

22.

of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called "super strike" offenses:

> "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

> "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

> "(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

> "(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

> "(V) Solicitation to commit murder as defined in Section 653f.

> "(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

> "(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

> "(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The question is whether section 1170.18, subdivision (c) now limits a trial court's discretion to deny resentencing under the Act to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit a new "super strike" offense. Defendant says it does. The People disagree. We agree with the People.[16]

---

[16] We solicited supplemental briefing concerning Proposition 47. Among the questions we asked counsel to answer were whether defendant met the criteria for resentencing under section 1170.18 and, if so, whether we needed to determine the applicability, if any, of section 1170.18, subdivision (c) to resentencing proceedings

23.

"'In interpreting a voter initiative …, we apply the same principles that govern statutory construction. [Citation.]' [Citation.] "'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]''' [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.) Thus, in the case of a provision adopted by the voters, "their intent governs. [Citations.]" (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, "'we look first to the words themselves. [Citations.]'" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1014.) We give the

---

under section 1170.126. We are satisfied it is appropriate for us to reach the issue of applicability regardless of whether defendant might obtain resentencing under Proposition 47.

It appears that a number of inmates will be eligible to seek resentencing under both the Act and Proposition 47. Such an inmate need not wait to file a petition under Proposition 47 until the trial court's ruling on the inmate's petition under the Act is final. A trial court is not divested of jurisdiction over a Proposition 47 petition by the fact a petition under the Act is pending, whether in a trial court or a Court of Appeal, with respect to the same inmate. (Cf. *People v. Mayfield* (1993) 5 Cal.4th 220, 222-227; *People v. Johnson* (1992) 3 Cal.4th 1183, 1256-1257; *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473.) While the general rule is that "an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court [citations]" (*Anderson v. Superior Court* (1967) 66 Cal.2d 863, 865), the subject matter of a ruling on a petition under the Act is legally independent from a petition under Proposition 47 (see *People v. Superior Court* (*Gregory*) (2005) 129 Cal.App.4th 324, 332).

In light of the differences between the two proceedings — for instance, an inmate resentenced under Proposition 47 is generally subject to one year of parole (§§ 1170.18, subd. (d), 3000.08), while an inmate resentenced under the Act is subject to up to three years of postrelease community supervision (§ 3451; *People v. Tubbs* (2014) 230 Cal.App.4th 578, 585-586, petn. for review pending, petn. filed Nov. 12, 2014, time for grant or denial of review extended to Feb. 10, 2015; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 637-638) — we express no opinion concerning whether the granting of a Proposition 47 petition would render moot resentencing proceedings, whether in a trial court or on appeal, under the Act. Nothing we say should be read as expressing any opinion concerning the appropriate result should defendant seek resentencing under Proposition 47.

24.

statute's words "'a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute … in order to determine the scope and purpose of the provision …. [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute ….' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.… [S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

"'"'When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) On its face, "[a]s used throughout this Code," as employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47. (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164-165, 166; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254-1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (f). (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at p. 1255.) "The literal language of a statute does not prevail if it conflicts with the lawmakers' intent …. [Citations.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033-1034.) "'The apparent purpose of a statute will not be sacrificed to a literal construction.' [Citation.]"

25.

(*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.)  Rather, "the literal meaning of a statute must be in accord with its purpose."  (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927.)  "[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole .…"  (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.)  "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment.  [Citation.]"  (*In re Michele D.*, *supra*, 29 Cal.4th at p. 606; accord, *People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

Thus, "'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.  [Citations.]'  [Citation.]  We also '"refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]'  [Citation.]"  (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1034.)  We consider "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387), as well as "the wider historical circumstances" of the statute's or statutes' enactment (*ibid*.).  "'Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]'  [Citation.]"  (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1034-1035.)

Proposition 47 and the Act address related, but not identical, subjects.  As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see *People v. Acosta*, *supra*, 29 Cal.4th at

p. 112; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 781), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see *People v. Disibio* (1992) 7 Cal.App.4th Supp. 1, 5).

As is evidenced by its title, the Act was aimed solely at revising the three strikes law.  That law, as originally enacted by the Legislature, was described by us as follows:

> "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism.  Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses.  [Citation.]  The primary goals of recidivist statutes are:  '… to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time.  This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.  Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.'  [Citation.]

> "By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes.  Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823-824.)[17]

---

[17]     The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code.  The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994:  "'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when … a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley*, *supra*, 55 Cal.4th at pp. 528-529.)

Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the "Findings and Declarations" of the Act stated the Act would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of proposed law, § 1, p. 105.) Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) were engrafted onto resentencing proceedings under section 1170.126, subdivision (f). That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a "super strike" offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).

---

been previously convicted of serious and/or violent felony offenses.'" (See Historical and Statutory Notes, 50C West's Ann. Pen. Code (2004 ed.) foll. § 1170.12, p. 239.)

The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of the health, safety, and welfare of the people of the State of California*, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra*, text of proposed law, p. 110, original italics omitted, italics added.) As we explained in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 — while titled "the Safe Neighborhoods and Schools Act" — emphasized monetary savings. The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed law, § 2, p. 70.) Uncodified section 15 of the measure provides: "This act shall be broadly construed to accomplish its purposes," while uncodified section 18 states: "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, text of proposed law, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).)

Section 1170.18 renders ineligible for resentencing *only* those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on the Act, which dealt with offenders whose current convictions *would still be felonies*, albeit not third strikes. For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, official title and summary, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*. This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained:

> "This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for

30.

one year, unless the judge chooses to remove that requirement." (*Id*. at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act. The Argument in Favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument in favor of Prop. 47, p. 38.) The Rebuttal to Argument Against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument against Prop. 47, p. 39.) Although the Rebuttal to Argument in Favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the Act. The same is true of the discussion of resentencing contained in the Argument Against Proposition 47. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code ...." Voters cannot intend something of which they are unaware.

31.

We are cognizant one of the Act's authors has taken the position Proposition 47's definition of "unreasonable risk of danger" applies to resentencing proceedings under the Act. (St. John & Gerber, *Prop. 47 Jolts Landscape of California Justice System* (Nov. 5, 2014) Los Angeles Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Dec. 22, 2014].)  Looking at the information conveyed to voters, however, this clearly was not *their* intent and so an author's desire is of no import.  (Cf. *People v. Garcia* (2002) 28 Cal.4th 1166, 1175-1176, fn. 5; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

We are also mindful "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation].  'This principle applies to legislation enacted by initiative.  [Citation.]'  [Citation.]" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1015; accord, *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.)  Thus, we presume voters were aware "unreasonable risk of danger to public safety," as used in section 1170.126, subdivision (f), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition.  (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770, petn. for review pending, petn. filed Nov. 18, 2014; *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075.)  Because nowhere in the ballot materials for Proposition 47 was it called to voters' attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect.  Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure.  As we

32.

have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act. (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Public Contract Code].)**18**

We are asked to infer an intent to extend section 1170.18, subdivision (c)'s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code. We cannot do so. The only resentencing mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to *misdemeanors*, not those who would still warrant *second strike felony terms*. There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.

We recognize "[i]t is an established rule of statutory construction … that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings. [Citations.]" (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5; see *Robbins v. Omnibus R. Co.* (1867) 32 Cal. 472, 474.) We question whether Proposition 47 and the Act are truly in pari materia: That phrase means "[o]n the same

---

**18**     For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of "unreasonable risk of danger to public safety" as used in section 1170.126, subdivision (f). (Cf. *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1511; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1238.)

subject; relating to the same matter" (Black's Law Dict. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders.  In any event, "canons of statutory construction are merely aids to ascertaining probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10); they are "mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1391).

The Act was intended to reform the three strikes law while keeping intact that scheme's core commitment to public safety.  Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) clearly furthers the Act's purpose.  Whatever the wisdom of Proposition 47's policy of near-universal resentencing where *misdemeanants* are concerned — and "[i]t is not for us to gainsay the wisdom of this legislative choice" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 813) — constraining that discretion so that all but the worst *felony* offenders are released manifestly does not, nor does it comport with voters' intent in enacting either measure.

Accordingly, Proposition 47 has no effect on defendant's petition for resentencing under the Act.  Defendant is not entitled to a remand so the trial court can redetermine defendant's entitlement to resentencing under the Act utilizing the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c).**19**

---

**19**    Recently, the Third District Court of Appeal held section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" does not apply retroactively to defendants whose petitions for resentencing under the Act were decided before the effective date of Proposition 47.  (*People v. Chaney* (Dec. 1, 2014, C073949) ___ Cal.App.4th ___, ___-___ [2014 D.A.R. 15934, 15935-15936].)  *Chaney* did not decide whether Proposition 47's definition applies prospectively to such petitions.  (*Chaney*, *supra*, at p. ___, fn. 3 [2014 D.A.R. 15934, 15936, fn. 3].)  Were we to

**II.** **THE TRIAL COURT WAS NOT REQUIRED TO OBTAIN A SUPPLEMENTAL PROBATION REPORT BEFORE DENYING THE PETITION.**

Defendant argues the trial court erred by failing to obtain a supplemental probation report prior to denying his petition. He asserts such a report is necessary because the trial court's decision whether to resentence him to a second strike term under section 1170.126 is the functional equivalent of a decision whether to admit him to probation. Defendant contends he is entitled to reversal of the trial court's denial of his petition and a remand for further proceedings that include the preparation of such a report. We disagree.

Initially, we note defendant did not request a supplemental probation report or object to proceeding without one. Where, as here, a defendant is ineligible for probation, such omissions result in waiver of a supplemental report in the trial court and forfeiture of the right to object to the absence of such a report on appeal. (*People v. Murray*, *supra*, 203 Cal.App.4th at p. 289, fn. 12; *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1431-1432; *People v. Llamas* (1998) 67 Cal.App.4th 35, 38-39; but see *People v. Dobbins* (2005) 127 Cal.App.4th 176, 178, 181-182 [waiver and forfeiture principles not applicable where defendant remained eligible for probation grant on remand].) This is so even where, for instance, the issue before the sentencing court was whether to exercise discretion to dismiss a strike under section 1385 and *Romero*, *supra*, 13 Cal.4th 497.

---

conclude section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would agree with *Chaney* that it does not do so retroactively. We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and that prospective-only application of Proposition 47's definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection issues. "Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their constitutionality [citations]" (*People v. Skinner* (1985) 39 Cal.3d 765, 769), we rest our holding on the reasoning set out in our opinion, *ante*.

(*People v. Johnson*, *supra*, 70 Cal.App.4th at pp. 1432-1433; see *People v. Llamas*, *supra*, 67 Cal.App.4th at p. 41, fn. 8.)

On the merits, however, we do not find a trial court has a duty to obtain a supplemental probation report. Referral of the matter to the probation officer for investigation and report is mandatory when a defendant convicted of a felony is eligible for probation (§ 1203, subd. (b)(1); Cal. Rules of Court, rule 4.411(a)),[20] but discretionary when the defendant is ineligible for probation, except where the amount of a restitution fine must be determined (§ 1203, subd. (g); rule 4.411(b)).[21]

Defendant concedes he was ineligible for probation even as a second strike offender. (§§ 667, subd. (c)(2), 1170.12, subd. (a)(2).) Accordingly, neither statute nor rule of court required the trial court to obtain a supplemental report. (E.g., *People v. Murray, supra,* 203 Cal.App.4th at p. 289; *People v. Dobbins*, *supra*, 127 Cal.App.4th at p. 180; *People v. Llamas*, *supra*, 67 Cal.App.4th at pp. 39-40; *People v. Bullock* (1994) 26 Cal.App.4th 985, 986-987, 989; *People v. Webb* (1986) 186 Cal.App.3d 401, 409.) Defendant argues, however, that the language in rule 4.414, criteria affecting probation — "[t]he likelihood that if not imprisoned the defendant will be a danger to others" — is sufficiently like the factor to be considered by the trial court under section 1170.126, subdivision (f) — whether defendant "would pose an unreasonable risk of danger to public safety" — to support the conclusion a referral for a supplemental probation report is required. We decline to impose a mandatory duty on the trial court where the statutes and rules of court granting authority for probation reports do not so provide.

---

[20]    Further references to rules are to the California Rules of Court.

[21]    Rule 4.411(c) states: "The court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared." Read in light of rule 4.441(a) and (b), however, rule 4.411(c) requires a supplemental report only if the defendant is eligible for probation. (*People v. Johnson*, *supra*, 70 Cal.App.4th at p. 1432.)

Defendant makes no attempt to convince us the trial court not requesting a supplemental report constituted an abuse of discretion.[22] Rather, he argues the court's failure to obtain such a report prejudiced him, because it is reasonably probable the court would have resentenced defendant had it "reviewed a probation report objectively providing a thorough assessment of [defendant], including overview of his 15 years in prison." (See *People v. Dobbins*, *supra*, 127 Cal.App.4th at p. 182 [applying standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 to erroneous failure to obtain supplemental probation report].) Because defendant fails to establish error, we do not reach his claim of prejudice.

## DISPOSITION

The judgment is affirmed.

_____
DETJEN, J.

I CONCUR:


_____
LEVY, Acting P.J.

---

**22** Nothing in the record suggests the trial court incorrectly believed it could not order a supplemental report if it wanted to do so. (See *People v. Bullock*, *supra*, 26 Cal.App.4th at p. 990.)

PEÑA, J.,

I concur in the judgment and the majority opinion with the exception of part I.D.2. I agree defendant may not take advantage of Proposition 47's**[1]** newly enacted definition of "unreasonable risk of danger to public safety," as provided in Penal Code section 1170.18, subdivision (c) (1170.18(c)).  I do so not because there is any ambiguity in the language used in section 1170.18(c) or the notion that the statute does not mean what it says, i.e., that the new definition applies "throughout this Code."  Rather, in my view, there is no indication the electorate, in enacting section 1170.18(c), intended it to apply retroactively to resentencing determinations under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).

## I.     After November 4, 2014, the definition of "unreasonable risk of danger" in Section 1170.18(c) applies throughout the Penal Code

Section 1170.18(c) provides:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, long past the time of defendant's resentencing hearing. Unless the legislation was designed or intended to apply retroactively, the definition in section 1170.18(c) cannot apply to defendant.  This is the only inquiry we must make to resolve the issue of whether the definition in section 1170.18(c) applies to defendant. However, the majority has opted to determine whether the new definition applies to any resentencing provisions under the Act, past, present, or future.  I respectfully disagree with the majority's analysis and conclusion on this broader issue.

---

**[1]**The Safe Neighborhood and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

"'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."'  [Citations.]  '[W]e begin with the words of a statute and give these words their ordinary meaning.'  [Citation.]  'If the statutory language is clear and unambiguous, then we need go no further.'  [Citation.]  If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'  [Citation.]  Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'  [Citation.]"  (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources.  (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.)  Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language.  (*People v. ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

In determining whether the words enacted here are unambiguous, we do not write on a blank slate.  For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1255, the court stated there "is nothing ambiguous about the phrase 'as used in this code.'"  It held the definition of "Emergency, as used in this code" applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code.  Also, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166, the court held:  "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code."

In a similar vein, the court in *People v. Leal* (2004) 33 Cal.4th 999, 1007-1008, applied the plain meaning rule as follows:

"The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous. The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means ….' (§§ 261, subd. (b), 262, subd. (c).) This clear language belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses.

"Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of 'duress' that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of 'duress' in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term 'duress.' Defendant observes: 'The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of "duress" to apply only to rape so that it would have one meaning when the rape statutes use the phrase "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.'

"But the Legislature was not required to set forth its reasons for providing a different definition of 'duress' for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so. 'When "'statutory language is … clear and unambiguous there is no need for construction, and courts should not indulge in it.'" [Citations.] The plain meaning of words in a statute may be disregarded only when that meaning is "'repugnant to the general purview of the act,' or for some other compelling reason …." [Citations.]' [Citation.] As we said in an analogous situation: 'It is our task to construe, not to amend, the statute. "In the construction of a statute … the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted …." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]"

The majority pays lip service to the plain meaning rule and then ignores it. While acknowledging the language used is unambiguous, it nonetheless engages in statutory construction to determine whether the electorate really intended to say what it actually enacted. The end result is a rewriting of the statute so that it comports with the majority's

3.

view of what the voters really intended. The majority has rewritten section 1170.18(c) so that it now states: "*As used in this section only*, 'unreasonable risk of danger to public safety' means …." The majority does so without providing a compelling reason to do so and without showing the plain language used has a "'meaning [that] is "'repugnant to the general purview of the act.'"'" (*People v. Leal*, *supra*, 33 Cal.4th at p. 1008.) Because the Act had not previously defined the phrase "unreasonable risk of danger to public safety," the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor does the majority claim the definition is repugnant to the general purview of Proposition 47. For these reasons, I respectfully disagree with the majority on this part of the opinion.

## II. Section 1170.18(c) has no application to defendant's resentencing under the Act

I do concur in the result because there is nothing in Proposition 47 to indicate the definition enacted under section 1170.18(c) is to be applied retroactively to defendant under the Act.

I begin my analysis with section 3 of the Penal Code, which provides that "[n]o part of it is retroactive, unless expressly so declared." "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear," section 3 provides the default rule. (*People v. Brown* (2012) 54 Cal.4th 314, 319.) Proposition 47 is silent on the question of whether it applies retroactively to proceedings under the Act. The analysis of Proposition 47 by the legislative analyst and the arguments for and against Proposition 47 are also silent on this question. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) pp. 34-39.) Because the statute contains no express declaration that section 1170.18(c) applies retroactively to proceedings under the Act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule applies.

4.

Defendant cites *In re Estrada* (1965) 63 Cal.2d 740 to argue retroactive application.

In *Estrada*, the court stated:

"When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

One may argue that under the *Estrada* case, unless there is a "savings clause" providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet reduced to a final judgment on the statute's effective date. (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745, 747-748.) However, the *Estrada* case has been revisited by our Supreme Court on several occasions. In *People v. Brown*, *supra*, 54 Cal.4th at page 324 the court stated: "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." "The holding in *Estrada* was founded on the premise that "'[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.'"" (*Id.* at p. 325.) In *Brown*, the court did not apply the *Estrada* rule because "a statute increasing the rate at which prisoners may earn credits for good behavior does not

5.

represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*People v. Brown*, *supra*, at p. 325.)

Similarly here, *Estrada* does not control because applying the definition of "unreasonable risk to public safety" in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime.[2]  Instead, the downward modification of a sentence authorized by the Act is dependent not just on the current offense but on any number of unlimited factors related to the individual offender, including criminal conviction history, disciplinary and rehabilitation records, and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (g)(3).)

Because section 1170.18(c)'s definition of "unreasonable risk of danger to public safety" does not apply retroactively to the Act, the sentencing court applied the correct standard in exercising its discretion to not resentence defendant.[3]  Since defendant has failed to show an abuse of that discretion, I concur in the majority's affirmance of the judgment.

_____

PEÑA, J.

---

[2]For this reason, *Holder v. Superior Court* (1969) 269 Cal.App.2d 314, also relied upon by defendant, does not apply because its analysis and conclusion were based on *Estrada* prior to its clarification by subsequent California Supreme Court cases.

[3]Recently in *People v. Chaney* (Oct. 29, 2014 C073949) __ Cal.App.4th __ the Third District Court of Appeal held the definition of "unreasonable risk of danger to public safety" as provided in section 1170.18(c) does not apply retroactively.  I agree.